17 N.J. Super. 128 (1951)
85 A.2d 523
HARRY SMITH, PLAINTIFF-APPELLANT,
v.
GEORGE SMITH, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 1951.
Decided December 12, 1951.
*130 Before Judges McGEEHAN, JAYNE, and WM. J. BRENNAN, JR.
Mr. Michael G. Alenick argued the cause for appellant.
Mr. Jules E. Tepper argued the cause for respondents (Messrs. Tepper, Tepper & Verney, attorneys; Mr. Ira D. Dorian, on the brief).
The opinion of the court was delivered by JAYNE, J.A.D.
The sole inquiry addressed to us by the plaintiff-appellant is "did the trial court err in denying the *131 requests of counsel to present additional testimony?" Counsel for the appellant with becoming frankness and candor states in his reply brief, "to reduce discussion and to pinpoint the issue, for all practical purposes it may be conceded that the proofs, up to the time of the defendants' motion for dismissal, did not establish a prima facie case." The trial occurred in the Chancery Division where on motion on behalf of the defendants the action was dismissed in consequence of the inadequacy of essential proof.
Some measure of significance must also be attributed to the evident fact that it was not until after counsel for the plaintiff had announced the conclusion of his introduction of the evidence, rested his affirmative branch of the case, and after the hearing of the arguments on the motion to dismiss, that a somewhat qualified request was on a subsequent date made to present additional testimony. The present protest is that the trial judge erroneously exercised his discretion in denying the request.
Well embedded in legal nomenclature and in judicial parlance are the terms "judicial discretion" and its companion "abuse of discretion." It has been often apprehended that the latter term has been unhappily composed especially where such intensifying adjectives as "gross" and "palpable" are attached to it, in that it has the likely implication of a charge of bad faith, perversity, partiality, or some other improper motivating influence. Vide, Hager v. Weber, 7 N.J. 201, concurring opinion at p. 213 (1951). We have chosen to denominate the course of conduct occasionally constituting reversible error in such instances as a "mistaken exercise of discretion."
Judicial discretion is an indispensable ingredient of judicial power. The trial judge must be invested with the magistracy of the courtroom procedure. Among his powers, yes duties, are those of presiding, of preserving order and decorum, of regulating the conduct of those who participate in the proceedings, the granting of continuances, and of so supervising the trial that there may be such economy of *132 time, effort and expense as is commensurate with the rights of the parties to present their claims and defenses.
It has been said that judicial discretion is that discretion which is not and cannot be governed by any fixed principles and definite rules because the possible eventualities to be dealt with in the exercise of that power cannot be specifically catalogued. Such a definition obviously offends accuracy. Chief Justice Marshall in his decision rendered in Osborn v. U.S. Bank, 9 Wheat. 738, 866, 6 L.Ed. 204 (1824), stated: "Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect * * * to the will of the law."
Lord Mansfield had said in Rex v. Wilkes, 4 Burr. 2527, that judicial discretion "means sound discretion, guided by law. It must be governed by rule, not by humour. It must not be arbitrary, vague and fanciful, but legal and regular."
Perhaps a more accurate composite definition is that "judicial discretion" is the option which a judge may exercise between the doing and the not doing of a thing which cannot be demanded as an absolute legal right, guided by the spirit, principles and analogies of the law, and founded upon the reason and conscience of the judge, to a just result in the light of the particular circumstances of the case. 23 Words & Phrases 278; Brandon v. Montclair, 124 N.J.L. 135 (Sup Ct. 1940), affirmed 125 N.J.L. 367 (E. & A. 1940); Beronio v. Pension Commission of Hoboken, 130 N.J.L. 620 (E. & A. 1943); Hoffman v. Maloratsky, 112 N.J. Eq. 333 (E. & A. 1933).
And so it is universally recognized that the authority to exercise judicial discretion is not an arbitrary power of the individual judge, to be exercised when, and as, his caprice, or passion, or partiality may dictate, or forsooth as his vindictiveness or his idiosyncrasies may inspire.
From an acquaintance with the more impressive judicial utterances on the subject of abuse of discretion, it will be deduced that there are two conditions which must exist to warrant an appellate court in nullifying a ruling of the trial *133 court made in the exercise of a conceded discretion. The first is that the judicial action must have been clearly unreasonable in the light of the accompanying and surrounding circumstances, and the second condition is that the ruling must have resulted prejudicially to the rights of the party complaining.
With relation to the first condition it is not to be supposed that a mere difference in judicial opinion concerning the feasibility, expediency or pragmatical propriety of the ruling is synonymous with abuse of judicial discretion. State v. Wood, 23 N.J.L. 560, 564 (E. & A. 1847); Day v. Donohue, 62 N.J.L. 380, 383 (E. & A. 1898).
Anent the second condition, Justice Southard in the early case of Ogden v. Gibbons, 5 N.J.L. 612 ([*]518) (Sup. Ct. 1819), remarked (at p. 626 ([*]531)): "But the inquiry always is, Has injustice been done? Has the party been injured? If he have not, no good reason can be given why he should receive the favor of trying his cause over again." In accord, Wait v. Krewson, 59 N.J.L. 71 (Sup. Ct. 1896). Essentially it is the manifest denial of justice to a party that constitutes an abuse of discretion.
Then underlying all is the ancient principle of law that every act of a court of competent jurisdiction shall be presumed to have been rightly done until the contrary is proved. Omnia praesumuntur rite et solemniter esse acta donec probetur in contrarium. Co. Litt. 232. Each case must be decided upon its own facts.
The application which was denied in the present case was tantamount to a request for a continuance and prolongation of the trial. That such an application is addressed to the sound discretion of the trial judge is undoubted. Equally indubitable is the rule that the appellate court will not interfere with the exercise of that discretion unless the action of the trial court is plainly erroneous and manifestly a misuse of its discretion. Michael v. Southern Lumber Co., 101 N.J.L. 1 (Sup. Ct. 1925).
*134 It must not be anticipated by the bar that under the authority of Rules 1:2-20 and 4:2-6 we are on appeal to ignore or depreciate the regard heretofore accorded the rulings of the trial judges in matters of judicial discretion and invalidate such determinations merely because from our examination of the record we believe that we would have decided differently. Cf. Faux v. Willett, 69 N.J.L. 52 (Sup. Ct. 1903); Bowell v. Public Service Corporation, 77 N.J.L. 231 (Sup. Ct. 1908); Bowen v. Healy's, Inc., 16 N.J. Misc. R. 113, 115 (Cir. Ct. 1938).
In the matter sub judice the denial of the belated application was clearly within the bounds of sound discretion. The circumstances may be summarized.
The plaintiff instituted and prosecuted this action to establish that his brother George utilized his wife, son, brother-in-law, and certain designated corporations as receptacles and instrumentalities to conceal his own assets and thereby to defraud his creditors, of whom the plaintiff was one.
Three days were apparently devoted to the hearing of the cause. Counsel for the plaintiff concluded the introduction of his evidence and voluntarily rested his case. The following comments were made by the judge:
"Let me interrupt you to say: I am doing this questioning now, because it is a rare case in which I grant judgment at the close of the plaintiff's case, but I am frank to admit that I have got to be shown what I don't see now, the evidence upon which I am justified in putting the defense on their proof.

* * * * * * * *
I will allow time to file a brief, because, as I say, it is a rare case, as far as I am concerned, when I don't require a defendant to go forward, but at the moment I can see no justification for my requiring these defendants to put in their proof. The thing that strikes me about this whole affair, and which, apparently, is of complete mystery, as far as I am concerned, is the three principals in the case are in the court-room and have been in the court-room ever since the case started, Arthur Smith, George Smith, and Harry Smith, to say nothing of the ladies; not one of them has been called to the witness-stand. Now, there may be in the evidence here something which would justify my requiring them to make their proofs *135 or submit their proofs, but, in the first instance, the job is yours, and I have got to be shown.

* * * * * * * *
I have no intention of speculating on your reasons. You are trying the case, I know, but it strikes me as odd, with all three of the Smiths in the court-room being here every day, all of them, none has been asked to give any testimony regarding these transactions about which certainly they know more than anybody else.

* * * * * * * *
You may call all of them, but it is not for me to tell you how to try the case. You know what I think. I will give you two weeks to satisfy me that I should require the defendants to meet the plaintiff's case. At the moment I am disposed to grant the motion for a judgment, but it is so contrary to my usual practice, that at the risk of being unfair to your adversary, I would give you two weeks to satisfy me that the defendants are to go forward; the brief, of course, being submitted to counsel at the same time it is submitted to me."
Counsel for the plaintiff thereafter submitted his brief with an accompanying communication which contained the following paragraphs:
"It is my sincere conviction that perusal of the enclosed memorandum will persuade Your Honor that the defendants should be required to go forward with their evidence and that their motion for dismissal should be denied.
Should Your Honor feel that the testimony of George Smith and the other defendants should be adduced before the close of plaintiff's case may I ask Your Honor to give favorable consideration to the following suggestion, viz: that the Court call George Smith, Arthur I. Smith and Ida Smith as the Court's own witnesses and in that way enable me as attorney for the plaintiff to cross-examine those defendants freely and without exposing myself to the hazard that I might be bound by the testimony of a hostile witness if I were to call that witness."
In the brief counsel for the plaintiff stated:
"In view of the record, it was not thought necessary to have the plaintiff take the stand to repeat what the record reveals. Nevertheless, in view of your Honor's comment, I respectfully ask leave to call the plaintiff to the witness stand before the case is concluded.
George Smith and Arthur Smith obviously would be hostile witnesses, and the plaintiff would not like to put himself in a position where he would be bound by their testimony, nor would he want to be confronted with a situation where if those defendants or other *136 defendants were called by the plaintiff and gave adverse testimony, all the plaintiff could do would be to neutralize the effect of that adverse testimony by such evidence as is available to the plaintiff. Notwithstanding that danger, however, if the court should peradventure deem that the evidence submitted by the plaintiff was insufficient to make out a prima facie case, then leave is asked to put on the stand George Smith, Arthur Smith, and other defendants, so that the court may get the entire picture before it."
The judge announced his decision to dismiss the action, after which an application for leave to reopen the case for the purpose of presenting additional evidence was made. This application was made somewhat mellifluous by incorporating in the supporting affidavit of counsel that "through mistake and inadvertence I omitted to call to the witness stand before resting plaintiff's case, which took thus far three days to try, the plaintiff and other witnesses * * *." "I respectfully submit that any error or inadvertence committed by me as counsel at this stage of the proceedings should not militate against my client's cause and I should be afforded the opportunity to present the additional proofs and testimony as applied for in the foregoing motion." This is an exemplification of 20-20 hindsight.
Nowhere in the record before us is there any authentic disclosure of the relevancy, the materiality, the purport, or the determinative influence of the additional evidence sought to be introduced. Nor is there any intimation that it has been newly discovered. Unless it was made evident to the trial judge that the proposed witnesses could say something in favor of the plaintiff's alleged cause of action, there was no foundation for the motion to reopen and we think that the rights of the plaintiff in the circumstances were not substantially impaired by depriving him of an opportunity to speculate.
Moreover we have observed that one of the witnesses sought to be tardily called was the plaintiff and that the deposition of the judgment debtor which had been taken before trial was in part introduced in evidence on behalf of the plaintiff.
"But," said the Court of Errors, "if it was material it *137 was not an abuse of discretion to refuse to open the case and admit evidence omitted which was within the knowledge of the party before the close of the case." Blum v. Parsons Manufacturing Co., 95 N.J.L. 471, 473 (E. & A. 1921).
"We find no error in the trial court's refusal to permit the plaintiff to introduce further evidence after the court's opinion had been rendered * * *." Cauco v. Galante, 6 N.J. 128, 138 (1951).
The judgment is affirmed.