16 A.3d 1028

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. MICHAEL HAYES, DEFENDANT–APPELLANT.

Argued February 28, 2011—Decided March 31, 2011.

524

*Alison S. Perrone,* Designated Counsel, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Frank J. Ducoat,* Deputy Attorney General, argued the cause for respondent (*Paula T. Dow,* Attorney General of New Jersey, attorney).

Justice RIVERA–SOTO delivered the opinion of the Court.

This appeal requires that we evaluate the denial of a request for an adjournment to obtain conflict-free counsel in the context of a motion to withdraw two guilty pleas. Defendant Michael Hayes, having pled guilty to charges arising out of two separate indictments pursuant to a written plea agreement, sought additional time to advance a request to withdraw his guilty pleas before sentencing; he represented to the trial court that he had sought to secure the services of two separate lawyers for that application, one of whom could not represent defendant due to a conflict of interest, and the other who agreed to represent defendant but who could not attend that day's proceedings due to a scheduling

conflict. A privately retained lawyer—who, to that point, had represented defendant on one of the two indictments—explained to the trial court that he too could not represent defendant in the application because he assumed, based on defendant's claims of ineffective assistance of counsel arising out of the plea proceedings, that he would be a witness in defendant's motion to withdraw his guilty pleas. Although at that moment defendant effectively was without counsel, and without conducting an inquiry into defendant's claims, the trial court denied the requested adjournment, denied defendant's application to withdraw his guilty pleas, and sentenced defendant in accordance with his plea agreement.

Last minute motions to withdraw guilty pleas present often contradictory concerns, the motivations for which are difficult to discern: some may be tactical maneuvers that bear no relation to the initial propriety of the plea, but instead arise from fear of the consequences of one's acts, buyer's remorse, a realization of certain and perhaps lengthy imprisonment, or other, like sources, while others may be grounded on solid, proper bases. For that reason, the task confronting a trial court when determining a motion to withdraw a guilty plea is neither simple nor easy. To aid in that admittedly difficult process, we reaffirm the principles set forth in *State v. Slater*, 198 *N.J.* 145, 966 *A.*2d 461 (2009), that govern the factors relevant to motions to withdraw guilty pleas and underscore the different burdens of proof that apply based on whether the motion is made pre- or post-sentencing. That said, those jurisprudential notions presuppose that, in advancing an application to withdraw a guilty plea, a defendant has received the basic protection constitutionally required for all who stand accused of a crime: the benefit of counsel. Here, because defendant was required to proceed on his oral application to withdraw his guilty pleas without the benefit of counsel, a fair and informed judgment of whether he should have been allowed to withdraw his guilty pleas cannot be reached. Therefore, this case must be remanded to the trial court for a properly counseled *Slater* hearing, to be conducted under the "interests of justice" pre-sentencing burden

of proof codified in *Rule* 3:9–3(e), and not under the "manifest injustice" post-sentencing burden of proof set forth in *Rule* 3:21–1.

I.

On April 30, 2007, a patron at an Atlantic City casino cashed out nearly eight thousand dollars in chips. While in a public bathroom shortly thereafter, defendant used his hand to simulate a gun, poked his finger into the patron's back, and demanded the patron's money or defendant would "blow his brains out[.]" Defendant and the patron struggled, but defendant was able to take the money from the patron and flee. Defendant was pursued by Officer Syndor of the Atlantic City Police Department, and eventually was arrested. Defendant's entry to and exit from the bathroom were captured by the casino's surveillance cameras, and the patron later positively identified defendant as his assailant and robber. On July 5, 2007, the Atlantic County grand jury returned an indictment charging defendant with first-degree robbery, in violation of *N.J.S.A.* 2C:15–1, and fourth-degree resisting arrest, in violation of *N.J.S.A.* 2C:29–2(a)(3). Defendant was represented by retained counsel in respect of that indictment.

Less than two weeks after that indictment was returned and while released on bail for those charges, defendant was driving in Egg Harbor Township when a police officer flagged him down. Instead of complying, defendant fled, resulting in a car chase that at times exceeded 100 miles per hour. When he finally stopped, defendant had a firearm in his possession; based on his prior criminal record, defendant was disqualified from possessing any firearm. As a result of those events, the Atlantic County grand jury returned another, separate indictment, this one charging defendant with second-degree certain persons not to have weapons, in violation of *N.J.S.A.* 2C:39–7, third-degree eluding, in violation of *N.J.S.A.* 2C:29–2(b), and third-degree unlawful possession of a weapon, in violation of *N.J.S.A.* 2C:39–5(b). On the charges returned in this indictment, defendant was represented by the Office of the Public Defender.

Defendant's two lawyers—his retained counsel and his public defender—jointly negotiated a plea agreement with the State that disposed of both indictments. Under that agreement, defendant was to plead guilty to the first-degree robbery charge from the first indictment and the third-degree eluding charge from the second indictment. In exchange, the State would recommend a thirteen-year prison term subject to the mandatory parole disqualifier and parole supervision requirements of the No Early Release Act (NERA), *N.J.S.A.* 2C:43-7.2, on the first-degree robbery charge; a concurrent term of five years on the third-degree eluding charge; and dismissal of all remaining counts of both indictments.[1]

On March 7, 2008, and again represented by both his retained counsel and his public defender, defendant—after a comprehensive examination under oath by the trial court—entered guilty pleas pursuant to the negotiated plea agreement. After ascertaining that defendant did not have "any physical or any other problem which affect[ed defendant's] ability to understand what's going on here today" and that defendant was not "presently under the influence of any drugs or medication or anything at all[,]" the trial court reviewed the written plea agreement form with defendant. Confirming that defendant had read, initialed and signed the written plea agreement form in several places, the trial court engaged defendant in a detailed colloquy, confirming first that defendant had reviewed the plea agreement form with both his retained counsel, in respect of the robbery charge, and his public defender, on the eluding charge. Addressing the contents of the plea agreement form, the trial court ascertained from defendant that he understood the plea agreement form; that defendant had answered correctly all of the questions on the plea agreement form; and that defendant had signed the plea agreement form voluntarily. Turning to the terms of his plea agreement, the trial court had defendant confirm that he understood that the maxi-

---

[1] Also to be dismissed as part of the plea agreement were thirty-one separate motor vehicle summonses stemming from the car chase.

mum sentence he could receive under the plea agreement was a term of imprisonment of thirteen years, subject to the provisions of NERA; that, pursuant to NERA, defendant would "have to do 85 percent of the sentence imposed before [defendant would be] eligible for parole[;]" that, under NERA, he would be subject to a period of "parole for five years once release[d;]" that if he "violated the terms of that parole, [he] could be returned to do the balance of [his] sentence[;]" and that defendant would receive "a five-year concurrent sentence on the eluding[.]" The trial court then had defendant assure the court that, other than what appeared on the plea agreement form, no additional promises had been made to defendant, and that no threats had been made to defendant to induce him to plead guilty.

After defendant provided a sworn factual basis for his guilty pleas to both the robbery and eluding charges, the trial court advised defendant of his right to a jury trial on each of the indictments to which defendant was pleading; that, at each of those trials, defendant would be cloaked with the presumption of innocence unless and until proven guilty beyond a reasonable doubt; that at those trials, defendant was entitled to be represented by counsel; that defendant had the right to remain silent, unless he voluntarily waived that right, and that no one could comment on defendant's exercise of that right; and that, by pleading guilty, defendant was waiving those rights. Defendant assured the trial court that he understood all of those rights and was voluntarily waiving them. The trial court also was assured by defendant that he was satisfied by the representation he had received from his retained counsel in the robbery case and his public defender in the eluding case, and that he had no questions of either counsel or of the court. The colloquy concluded:

> THE COURT: After everything we've been over under the terms of the plea agreement, which calls for a sentence not to exceed 13 years New Jersey S[t]ate Prison with a requirement of whatever the sentence that's imposed within that range is subject to the No Early Release Act, that means you got to serve 85 percent before you're eligible for parole, do you wish to enter these two guilty pleas?
>
> [DEFENDANT]: Yes.

Throughout the entire examination under oath, defendant never wavered and, more to the point, never advised the trial court that his guilty pleas were not knowingly and voluntarily entered or that he was otherwise dissatisfied with the plea agreement terms or consequences. More specifically, although provided the opportunity to do so several times, defendant never asserted he was innocent of the charges to which he was pleading guilty.

The trial court then ordered that a pre-sentence investigation report be prepared concerning defendant, and continued defendant's release on bail. But, the trial court explicitly and clearly cautioned that defendant "need[ed] to be arrest[-]free between [the sentencing date] and now to remain free on bail." Defendant was unable to comply with this condition: at some time between the entry of his guilty plea and his sentencing date, defendant was arrested on new charges,[2] and his bail was revoked.

Sentencing on the robbery and eluding pleas was scheduled for May 2, 2008. Although almost two months had elapsed since defendant's pleas, defendant's desire to withdraw his pleas was not raised with the trial court until the sentencing hearing itself, and then only by an oral application piggy-backed onto an oral request for an adjournment. In respect of the adjournment application, defendant's retained counsel stated he had "been contacted by no fewer than two other attorneys." He explained that the first substitute lawyer, despite expressing an initial interest in representing defendant on his plea withdrawal motion, could not do so due to a conflict of interest arising out of the most recent set of charges lodged against defendant after his guilty pleas had been entered and by reason of which defendant's bail had been revoked. He also stated that a second substitute lawyer said he could and would represent defendant on the plea withdrawal application, but the second substitute lawyer had a scheduling conflict for that day. Defendant's retained counsel also explained that defendant's fami-

---

[2] The record on appeal does not disclose the details concerning those new, now a third-set of charges.

ly "contacted me last week and they wanted me to make that [plea withdrawal] application[,]" noting that he had "indicated to them ethically [he] didn't feel [he] can do that" and that "[a] new attorney would have to get involved because then [he] would become a witness." Observing that defendant had "expressed an extreme displeasure with going forward to sentencing today[,]" defendant's retained counsel requested that defendant's sentencing be postponed "for at least two weeks so that [new, substitute counsel] could file the necessary motion to withdraw." Defendant's retained counsel expressed that defendant wished to address the trial court directly on that matter.[3]

Acceding to that request, the trial court inquired of defendant. Defendant explained:

> I never wanted this plea from the beginning. I asked to go to trial.... I was advised by my attorney, which was ineffective counsel, ... that you was going to revoke my bail [for the eluding case]. And I'm the sole provider for my wife and my daughter.... I never wanted this deal. I wanted to go to trial. I still want to go to trial. On the day I signed the deal, I hired an attorney right after that, [the first substitute lawyer], to take the plea back. You know, like I didn't know that you was going to revoke my bail, but I was advised by [defendant's private counsel] that you was going to revoke my bail if I didn't sign for this deal. I didn't want that deal. You see that I signed for trial, and I never wanted the deal and I still don't want the deal.... I mean to take the plea back if you allow it and go to trial.... I still want to go to trial and I don't want this deal if you allow it, Your Honor. I've been trying to hire counsel from last month—some time to put this motion in or whatever. .. You seen when I took this plea agreement I was very emotional....

In addition to stating that he felt compelled to plead guilty in fear that his bail would be revoked pending sentencing, defendant

---

[3] Following the adjournment request made by defendant's retained counsel, defendant's public defender echoed the application then made. She expressed that she "would go along with [defendant's retained counsel]'s request to have the matter adjourned, if that is [defendant]'s desire, and I would also just ask that Your Honor consider that he is, in fact, cloaked with the presumption of innocence on any new charges and I would ask that Your Honor factor that into your decision. Other than that, I would have nothing further to add." Later, when addressing the trial court in respect of defendant's sentence, she "again reinstate[d her] request for a postponement, dovetailing along with [defendant's retained counsel]'s request."

commented that his bail in fact had been revoked in the interim. The trial court responded:

I will simply note that when the plea was entered on [March 7, 2008] I said continue bail, must remain arrest[-]free was an express condition of the bail. So you walked out of the Courtroom after you entered your plea. You did not remain arrest free. Now, you can do whatever you care to defend those new charges quite simply. There was an arrest on very significant new charges, which led to what occurred and that's all I'll say.

The trial court concluded that, "at the time of the plea I was satisfied that a valid plea was entered, continued [defendant] on bail subject to his requirement that he remain arrest[-]free, and today was given as the [sentencing] date." It emphasized: "I have yet to hear[ anything] other than a change of mind, the pleader's form of buyer's remorse. I hear an application now to take the plea back. Well, there are legal standards for that, so I'm going to deny the application." It noted that it "intend[ed] proceeding with sentence and any motions which can be made with respect to the plea agreement the defendant is perfectly free to make with whoever he chooses to have present them. But I do intend proceeding with a sentence under the terms of the negotiated plea."

Once it heard from defendant's retained counsel and defendant's public defender in respect of sentencing, the trial court inquired whether defendant wished to be heard concerning the sentence to be imposed. Defendant returned instead to the denial of what had become his uncounseled oral application to withdraw his guilty pleas. He stated that "I know I'm not guilty of these charges. I was forced to take a plea. Like, I wasn't even in the right state of mind." He claimed that, at the plea hearing, "I was real hysterical, crying and all that." He asserted: "I was pressured to take that. I didn't want this plea and I didn't want this plea from the start. Like, I want it to be noted on the record I never wanted this plea and like I just don't understand this." He claimed his retained counsel had advised him that if he did not accept the pleas offered, the trial court "was going to lock me up and revoke my bail and that's why I took the deal." He repeated:

I just want to go to trial. That's it. I know all the faults. I know what I'm facing. All the adversity[,] whatever. I didn't ask for this deal. I don't want this. They

was forcing me. I wasn't even in the right capacity. Like, I was high, maybe made false judgments, all this. Like, I don't want this deal, Your Honor.

The trial court observed that defendant "clearly wasn't an enthusiastic pleader, but I'm also satisfied and said I believe at the time I accepted the plea that I found him competent to enter a plea, that he understood his rights. There was a factual basis. And he did enter a negotiated plea." On that basis, the trial court sentenced defendant in accordance with the plea agreement, and dismissed all remaining charges "without prejudice [to] rein-state[ment] should the plea be vacated[.]"

Defendant appealed and, in an unpublished, per curiam opinion, the Appellate Division affirmed. Addressing the factors relevant to the withdrawal of a guilty plea enumerated in *Slater, supra,* 198 *N.J.* at 157–58, 966 *A.*2d 461,[4] the panel was "persuaded the trial court properly denied defendant's motion to vacate his guilty plea." It noted that "[w]hile defendant expressed that he wanted to go to trial and was coerced into pleading guilty, he at no time raised a colorable claim related to the merits of the underlying charges against him." It observed that the evidence arrayed against defendant was overwhelming. It also remarked that "the guilty pleas entered here were part of a negotiated plea agreement" and that "[w]here a defendant's guilty pleas are part of a negotiated plea agreement that a defendant has entered knowing-ly and voluntarily, the pleas are presumed to possess a higher degree of finality." (citing *State v. Means,* 191 *N.J.* 610, 619, 926 *A.*2d 328 (2007)). Finding no infirmity in the denial of defendant's motion to withdraw his guilty pleas, the Appellate Division af-firmed defendant's convictions and sentence.[5]

Defendant sought certification, alleging that his pleas were not knowingly and voluntarily made, and that, under *Slater,* the

---

[4] *Slater* was decided nine months after defendant's motion to withdraw his guilty pleas was denied, but eleven months before the Appellate Division issued its judgment.

[5] The panel did not address what effect, if any, should be given to the fact that defendant was without counsel in the presentation of his motion to withdraw his

motion to withdraw his pleas should have been granted and his pleas vacated. That petition was granted, *State v. Hayes,* 203 *N.J.* 440, 3 *A.*3d 1228 (2010), and the parties separately were granted leave to submit supplemental briefs.

## II.

On certification, defendant has shifted his focus. He now principally contends that the trial court erred when it denied his request for an adjournment to secure counsel to press the motion to withdraw his guilty pleas. He asserts that forcing him to proceed in the circumstances presented was tantamount to depriving him of the constitutionally guaranteed right to counsel, an error that vitiated the subsequent proceedings.

The State argues that, in order to present a cognizable request for an adjournment, defendant was required to make a prima facie showing that the motion to withdraw his guilty pleas had merit; it urges that, based on the proceedings below, there is no basis to conclude that defendant's motion to withdraw his guilty pleas was anything more than a delay tactic. The State also asserts that, even if the denial of an adjournment was in error, that error was harmless because, again, defendant's plea withdrawal motion lacked merit. It concludes that any claim that defendant's retained counsel or defendant's public defender were ineffective in failing to advance defendant's motion to withdraw his guilty pleas requires the resolution of facts outside the record and, thus, must be preserved for a later petition for post-conviction relief.

## III.

### A.

*Slater, supra,* sets forth a four-prong test by which to gauge a defendant's motion to withdraw a guilty plea. It provides that

---

guilty plea; that issue was not raised squarely until defendant's later-filed supplemental brief before this Court.

trial judges are to consider and balance four factors in evaluating motions to withdraw a guilty plea: (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.

[198 *N.J.* at 157–58, 966 *A.*2d 461 (citation omitted).]

It also explains that although "[t]he same factors are to be used for motions filed either before or after sentencing," whether the motion is made pre- or post-sentencing "will trigger different burdens of proof for the movant[.]" *Id.* at 158, 966 *A.*2d 461. It underscores that "pre-sentence motions to withdraw a plea are governed by the 'interest of justice' standard in *Rule* 3:9–3(e), while post-sentence motions are subject to the 'manifest injustice' standard in *Rule* 3:21–1." *Ibid.*

That said, *Slater's* mandate would be rendered meaningless without the underlying constitutional guarantee of the assistance of counsel in presenting that motion. *See U.S. Const.* amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."); *N.J. Const.* art. I, ¶ 10 ("In all criminal prosecutions the accused shall have the right ... to have the assistance of counsel in his defense."); *see also State v. Fritz,* 105 *N.J.* 42, 58, 519 *A.*2d 336 (1987) (holding that, under New Jersey Constitution, "a criminal defendant is entitled to the assistance of reasonably competent counsel"). That constitutional guarantee "embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty[.]" *Johnson v. Zerbst,* 304 *U.S.* 458, 462–63, 58 *S.Ct.* 1019, 1022, 82 *L.Ed.* 1461, 1465–66 (1938).

Over thirty years ago, this Court acknowledged that "[w]ithout the guiding hand of counsel, an innocent defendant may lose his freedom because he does not know how to establish his innocence[,]" and that "[t]rained counsel is also necessary to vindicate fundamental rights that receive protection from rules of procedure and exclusionary principles." *State v. Sugar,* 84 *N.J.* 1,

16, 417 *A.*2d 474 (1980) (citations omitted). In sum, "[t]he right to be heard [in court] would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." *Powell v. Alabama,* 287 *U.S.* 45, 68–69, 53 *S.Ct.* 55, 64, 77 *L.Ed.* 158, 170 (1932).

■ The governing principle is simple and deeply ingrained in the fabric of our jurisprudence: "Because the assistance of counsel is essential to insuring fairness and due process in criminal prosecutions, a convicted defendant may not be imprisoned unless counsel was available to him at every critical point following the initiation of adversary judicial criminal proceedings[.]" *Sugar, supra,* 84 *N.J.* at 16, 417 *A.*2d 474 (citations and internal quotation marks omitted); *see also State v. A.O.,* 198 *N.J.* 69, 82, 965 *A.*2d 152 (2009) (holding that "[o]nce adversary judicial proceedings have begun, the right [to counsel] applies not only at trial, but to any critical stage of the prosecution, that is, any stage in which the substantial rights of the accused may be affected" (citation and internal quotation marks omitted)).

It is to the intersection of the right to the assistance of counsel with the denial of a criminal defendant's motion for an adjournment that we now turn.

### B.

Before defendant's sentencing proceeding began, his retained counsel advised the trial court that defendant sought an adjournment in order to secure counsel to prosecute a motion to withdraw his earlier entered guilty pleas; counsel explained that he could not press the withdrawal motion because he believed he would be a witness in that application and, therefore, was ethically bound to refrain from acting on that motion.[6] *See RPC* 3.7(a) (stating

---

[6] In light of defendant's representation under oath that he pled guilty because his retained counsel had informed him that otherwise the court would revoke his bail, defendant's retained counsel had a reasonable and colorable basis to

general rule that "[a] lawyer shall not act as advocate at a [proceeding] in which the lawyer is likely to be a necessary witness"). In support of that application, defendant represented—and, to a large degree, his retained counsel corroborated—that he had started his search for new counsel to advance the motion to withdraw his guilty pleas immediately after entering them; that the first lawyer he contacted agreed to represent him, but later had to withdraw from the representation due to a conflict arising out of defendant's most recent charges; and that a second lawyer also agreed to represent him, but was unable to attend the sentencing hearing due to a previously existing scheduling conflict. Based on the aggregate of these representations, defendant requested a two-week adjournment. The trial court denied the adjournment, thereby effectively requiring that defendant himself present his motion to withdraw his guilty pleas without the benefit of counsel, something defendant patently was ill-equipped to do.

New Jersey long has embraced the notion that "[a] motion for an adjournment is addressed to the discretion of the court, and its denial will not lead to reversal unless it appears from the record that the defendant suffered manifest wrong or injury." *State v. Doro*, 103 *N.J.L.* 88, 93, 134 *A.* 611 (E. & A.1926) (citations omitted); *see also State v. Gallo*, 128 *N.J.L.* 172, 174, 24 *A.*2d 557 (Sup.Ct.1942) ("The matter of postponement of a trial is one that is singularly within the sound discretion of the court."); *State v. Zied*, 116 *N.J.L.* 234, 239, 183 *A.* 210 (E. & A.1936) (quoting *Doro, supra* ).

More recently, that norm was expressed as "a trial court's decision to deny a request for an adjournment to permit a defendant to retain counsel of his choice will not be deemed reversible error absent a showing of an abuse of discretion which caused defendant a 'manifest wrong or injury.'" *State v. McLaughlin*, 310 *N.J.Super.* 242, 259, 708 *A.*2d 716 (App.Div.),

conclude that he could not represent defendant in his plea withdrawal application.

*certif. denied,* 156 *N.J.* 381, 718 *A.*2d 1210 (1998) (citation omitted). *State v. Furguson* exhaustively sets forth the principles that govern this inquiry:

> What constitutes a reasonable adjournment to permit a defendant to retain counsel of his own choice depends generally upon the surrounding facts and circumstances. One of the leading cases on the subject is *United States v. Burton,* [584 *F.*2d 485, 490–91 (D.C.Cir.1978), *cert. denied,* 439 *U.S.* 1069, 99 *S.Ct.* 837, 59 *L.Ed.*2d 34 (1979) ], where the court commented on the factors to be considered in determining whether a reasonable delay is warranted:
>
>> Some of the factors to be considered in the balance include the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.
>
> When a defendant applies for an adjournment to enable him to substitute counsel, the trial court must strike a balance between its inherent and necessary right to control its own calendar and the public's interest in the orderly administration of justice, on the one hand, and the defendant's constitutional right to obtain counsel of his own choice, on the other.
>
> [198 *N.J.Super.* 395, 402, 487 *A.*2d 730 (App.Div.), *certif. denied,* 101 *N.J.* 266, 501 *A.*2d 933 (1985).]

▮▮▮▮▮▮ Those factors in the aggregate instruct that whether a trial court should grant or deny a defendant's request for an adjournment to retain counsel requires a balancing process informed by an intensely fact-sensitive inquiry. In striking the necessary balance between all identified competing interests, the trial court's conclusions will not be disturbed absent a misuse of judicial discretion, that is,

> the option which a judge may exercise between the doing and the not doing of a thing which cannot be demanded as an absolute legal right, guided by the spirit, principles and analogies of the law, and founded upon the reason and conscience of the judge, to a just result in the light of the particular circumstances of the case.

[*Smith v. Smith,* 17 *N.J.Super.* 128, 132, 85 *A.*2d 523 (App.Div.1951), *certif. denied,* 9 *N.J.* 178, 87 *A.*2d 387 (1952).]

In that context,

> there are two conditions which must exist to warrant an appellate court in nullifying a ruling of the trial court made in the exercise of a conceded discretion. The first is that the judicial action must have been clearly unreasonable in the light of the accompanying and surrounding circumstances, and the second condition is that the ruling must have resulted prejudicially to the rights of the party complaining.
>
> [*Id.* at 132–33, 85 *A.*2d 523.]

In respect of "the first condition[,] it is not to be supposed that a mere difference in judicial opinion concerning the feasibility, expediency or pragmatical propriety of the ruling is synonymous with abuse of judicial discretion." *Id.* at 133, 85 *A.*2d 523 (citations omitted). And, as to the second condition,

> the inquiry always is, Has injustice been done? Has the party been injured? If he have not, no good reason can be given why he should receive the favor of trying his cause over again. Essentially it is the manifest denial of justice to a party that constitutes an abuse of discretion.
>
> [*Ibid.* (citations omitted).]

We now apply those principles to this appeal.

## C.

 No doubt, when defendant requested an adjournment of his sentencing proceeding in order to secure uncompromised counsel to represent him in respect of the motion to withdraw his guilty pleas, the trial court was confronted with a quandary, although one that, common experience tells us, occurs with disturbing regularity. Despite the fact that the sentencing proceeding had been scheduled since the guilty pleas were entered almost two months before, no one had alerted the trial court that a motion to withdraw those pleas was forthcoming. That said, defendant, who was then in custody as a result of his revoked bail status, and his retained counsel explained the efforts made to secure substitute counsel. Attributing the request to withdraw the guilty pleas solely to nothing "other than a change of mind, the pleader's form of buyer's remorse[,]" the trial court denied the

application for an adjournment and, without more, denied defendant's motion to withdraw his guilty pleas. Understandable as that reaction may have been under the circumstances presented, we are bound to conclude that the denial of the request for an adjournment constituted a misuse of discretion. Based on the clarity and scope of the plea colloquy coupled with the unexplained delay in notifying the trial court and the State of defendant's wish to withdraw his pleas, we reach that conclusion with reluctance; however, in the circumstances presented, the denial of defendant's request for an adjournment was unreasonable and prejudicial to defendant's rights.

At the outset of defendant's sentencing proceeding, once his retained counsel noted that, in his view, the *Rules of Professional Conduct* forbade him from representing defendant in respect of the motion to withdraw defendant's guilty pleas, defendant effectively was without representation, a status anathema to the fundamental constitutional notions of fairness that must guide criminal proceedings. In light of the uncontested representations concerning the efforts made in seeking substitute counsel, prudence dictated that, at the least, additional inquiry should have been made as to the availability of substitute counsel and a short adjournment granted to allow defendant to be represented by counsel in pressing the motion to withdraw his guilty pleas. In those circumstances, the effect of going forward on defendant's withdrawal motion equaled requiring that defendant proceed without counsel. In the context of a criminal proceeding, where liberty is at stake, that result cannot be countenanced, and constitutes "judicial action ... clearly unreasonable in the light of the accompanying and surrounding circumstances," and resulted in a "ruling ... prejudicial[ ] to the rights of the party complaining." *Smith, supra,* 17 *N.J.Super.* at 133, 85 *A.*2d 523.

The State argues, however, that even if it was error to deny defendant's application for an adjournment, that error was harmless because defendant's underlying motion to withdraw his guilty pleas lacked merit. We cannot agree. The record on

appeal discloses no meaningful analysis of the denial of defendant's withdrawal motion; the only references to that denial are the trial court's conclusions that, at the time the guilty pleas were accepted, defendant was found competent to enter a plea, that defendant then understood his rights, that there was a factual basis for the pleas, and that defendant entered into a negotiated plea. Solely based on those statements, the trial court concluded that "I have yet to hear, other than a change of mind, the pleader's form of buyer's remorse" anything to support the withdrawal motion, and that "there are legal standards for that[.]" On that basis, the trial court denied defendant's plea withdrawal motion.

*Slater* was decided after defendant's adjournment request and plea withdrawal motion were denied. Regardless, on the record presented, we cannot gauge whether defendant's plea withdrawal application satisfied any relevant standard then obtaining.[7] Where a defendant in practice has been denied the right to be represented by counsel—as in the circumstances present here— we can have no confidence in the uncounseled proceedings below. We cannot know whether defendant might have been able to satisfy the *Slater* standards with the help of a lawyer. We readily understand the consequences to defendant in this case, though: he lost the benefit of the less stringent pre-sentencing standard that would have applied to his plea withdrawal motion.

In light of the foregoing, the only meaningful remedy available is to remand this case to the trial court for a fulsome plea withdrawal hearing at which defendant is to be represented by unencumbered counsel. If, once the relevant factors are explored

---

[7] That said, *Slater, supra,* by its terms, made clear that its holding did not represent a new rule of law, but instead "distill[ed] common principles from [the earlier defined] body of law in an effort to help trial courts assess plea withdrawal motions." 198 *N.J.* at 157, 966 *A.*2d 461. Therefore, we need not address the retroactive application thereof. *See, e.g., State v. Dock,* 205 *N.J.* 237, 253–55, 15 *A.*3d 1 (2011) (describing retroactivity analysis); *State v. Cummings,* 184 *N.J.* 84, 96–98, 875 *A.*2d 906 (2005) (same).

and determined, the trial court concludes that defendant's motion to withdraw his guilty pleas should be denied, the matter is at an end, subject to limited appellate review of that hearing only. Conversely, if, after a robust plea withdrawal hearing the trial court is of the view that defendant should be allowed to withdraw his guilty pleas, then the trial court should so order, reinstate all of the charges previously pending against defendant—including all charges listed in both indictments as well as all of the motor vehicle summonses dismissed at sentencing—and promptly place the case on the trial calendar. Because defendant sought to have his motion to withdraw determined before sentence was imposed, we emphasize that his application on remand must be gauged under the lesser "interests of justice" burden of proof set forth for pre-sentence plea withdrawal motions under *Rule* 3:9–3(e), rather than the higher "manifest injustice" burden of proof applicable to post-sentence plea withdrawal motions under *Rule* 3:21–1.

## IV.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division for further proceedings consistent with the principles to which we have adverted. Jurisdiction is not retained.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO, HOENS and STERN (temporarily assigned)—7.

*Opposed*—None.