**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2157-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANDRZEJ J. DABEK,

     Defendant-Appellant.

_____

Submitted October 17, 2023 – Decided November 30, 2023

Before Judges Whipple, Enright and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Municipal Appeal No. 6263.

Law Offices of Curt J. Geisler, LLC, attorney for appellant (Curt J. Geisler, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Timothy P. Kerrigan, Jr., Senior Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Andrzej Dabek appeals from a February 23, 2022 order of the Law Division finding him guilty of driving under the influence, N.J.S.A. 39:4-50, after conducting a de novo review of the record developed in the municipal court pursuant to Rule 3:23-8. He also appeals from the denial of his motion for a judgment of acquittal and his request for a stay. We are convinced the Law Division judge's findings were reasonable and based on sufficient credible evidence in the record and he did not abuse his discretion in denying the defendant's request for a stay. We affirm.

Defendant argues:

> POINT I. DEFENDANT'S CONVICTION IS AGAINST THE WEIGHT OF THE EVIDENCE AND THE STATE FAILED TO ESTABLISH DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT CONTRARY TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.
>
> POINT II. A JUDGMENT OF ACQUITTAL IN FAVOR OF DEFENDANT SHOULD HAVE BEEN ENTERED IN THE LAW DIVISION AS TO THE DRIVING WHILE UNDER THE INFLUENCE CHARGES AT THE END OF THE STATE'S CASE SINCE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT WAS UNDER THE INFLUENCE WHEN HE OPERATED A MOTOR VEHICLE.
>
> POINT III. THE COURTS BELOW ERRED IN NOT STAYING THE TRIAL UNTIL THE SPECIAL

2

MASTER'S DECISION IN OLENOWSKI AS DEFENDANT'S COUNSEL AND EXPERT WITNESS WERE DEPRIVED OF THE SPECIAL MASTER'S FINDINGS AT TRIAL; IN ADDITION, IN SPITE OF THE SPECIAL MASTER'S DECISION IN OLENOWSKI THE COURT BELOW ERRED IN NOT FINDING THE DEFENDANT "NOT GUILTY" AS REASONBLE DOUBT EXISTS IN THIS CASE.

I.

In conducting its "trial de novo on the record below," R. 3:23-8(a)(2), the Law Division judge must make independent "findings of fact and conclusions of law but defers to the municipal court's credibility findings." State v. Robertson, 228 N.J. 138, 147 (2017).

Our standard of review is limited. State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005). In such an appeal, we consider only "the action of the Law Division and not that of the municipal court." State v. Palma, 219 N.J. 584, 591-92 (2014) (quoting State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001)). The "standard of review of a de novo verdict after a municipal court trial is to 'determine whether the findings made could reasonably have been reached on sufficient credible evidence presented in the record,' considering the proofs as a whole." State v. Ebert, 377 N.J. Super. 1, 8 (App. Div. 2005) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

3

We "do[] not weigh the evidence anew but merely determine[] whether the evidence supports the judgment of conviction." Johnson, 42 N.J. at 157. Furthermore, we "defer to trial courts' credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." State v. Locurto, 157 N.J. 463, 474 (1999). "[T]he rule of deference is more compelling where, as in the present case, two . . . courts have [made] . . . concurrent findings of fact and credibility determinations." Ibid. Therefore, appellate review of the factual and credibility findings of the municipal court and the Law Division "is exceedingly narrow." State v. Reece, 222 N.J. 154, 167 (2015) (quoting Locurto, 157 N.J. at 470).

II.

The State summoned three witnesses to trial: Sergeant Louis Pakovics, New Jersey State Police, and Sergeant Kevin Norton and Officer Daniel Banker of the Wanaque Police Department.[1] The municipal court judge found Sergeant

---

[1] The municipal court judge qualified Sergeant Pakovics as a drug recognition expert (DRE) and the parties stipulated that defendant's only witness, Frank Novakowski, was qualified as a DRE. Since we affirm the Law Division judge's conclusion of defendant's guilt, notwithstanding DRE opinions, we merely note the municipal court judge found that Mr. Novakowski's testimony did not undermine Sergeant Pakovics' credibility and the Law Division judge found Mr.

Pakovics credible, noting his "opportunity to observe him during his testimony," "his body language," and his "responsive . . . clear and concise" answers to questioning.[2]  Further, the judge found Officer Banker credible, noting that his "testimony was corroborated by . . . the video" and did not deviate between the two days of trial, and because of how the officer "carried . . . and conducted himself."  The judge also found Sergeant Norton credible.  He noted his testimony was "corroborated by what was depicted in the video" and was consistent with Officer Banker's testimony.

The Law Division judge deferred to the municipal court's credibility determinations but independently came to the same conclusions.

We derive the following facts from the record.  On July 14, 2018 at 1:19 p.m., Officer Banker responded to a 911 call at the intersection of Doty Road and Greenwood Avenue in Wanaque, New Jersey.  Upon his arrival, Officer Banker observed an automobile that appeared to be making a right turn onto

_____

Novakowski's testimony was "non-convincing" considering the video, "overreaching" in its criticism of Sergeant Pakovics and "he d[id] not place great weight on his testimony."

[2]  We include the municipal court judge's credibility determinations as to Sergeant Pakovics because, aside from his DRE opinion, the officer's credibility was important when considering his lay testimony about defendant's admissions and the sergeant's own observations.

A-2157-21

Greenwood Avenue but was "parked there" "blocking traffic." Sergeant Norton responded to the call and "observed the vehicle stopped in the middle of the road."

Officer Banker approached the automobile and observed defendant "leaning forward in the driver's seat," "apparently sleeping." Officer Banker observed: the vehicle "was not moving"; "the keys were in the [ignition]"; "the engine was running"; the vehicle "was in the drive position"; and defendant had his "foot on the brake."

Office Banker "shouted at [defendant] to wake him up." "After a few seconds," defendant woke up. According to the officer, defendant was "in a very sleepy stage, very confused, [and] he did not make much sense when responding to questions." Defendant held "wax folds in his right hand" and, when asked what they were, failed to give Officer Banker a "straight answer."

Once back-up officers arrived, defendant was "asked to exit the vehicle to [perform] field sobriety tests." After exiting the vehicle, defendant "had difficulty walking around or standing, he was swaying back and forth, and continually moving." Defendant continued to "seem[] confused" and did not talk in "complete sentences."

6

Officer Norton instructed defendant to follow his finger as he motioned it from side to side. Defendant could not follow his finger.

Officer Banker "read . . . instructions for the walk-and-turn test from his handbook of . . . traffic violations." Defendant indicated that he understood "the instructions." However, he "struggled to get into the initial starting position." "He was unable to put his left foot on the line and place his right [foot] in front, touching his right heel to his left toe." "He moved his arms for balance, and almost fell over."

Defendant was instructed to do the one-leg stand test.

> He briefly put his heels together and his arms at his side. He then spread his legs completely and bent over to touch the ground like he was stretching. After approximately 30 seconds, he got up, and attempted to do the test again. He was not able to maintain the position he was standing in. He did not look at his raised foot, he used both arms for balance, and crossed his foot completely on the other side of his body for balance. He used the ground to try to pick himself up and almost fell over several times.

Officer Banker, "based upon his observation and training, was of the opinion that defendant was driving under the influence." Defendant "was placed under arrest and transported to headquarters." He "consented to alcohol testing . . . [and] the Alcotest results indicated a .05 blood alcohol content." Sergeant

7

Norton, who had administered the Alcotest, had "no doubt in his mind that [defendant] was impaired."

Since defendant "did not appear to be in any condition to" drive a motor vehicle and "appeared to be more impaired than exhibited by the .05 blood ffalcohol reading," he was transported to undergo an evaluation by Sergeant Pakovics.

Sergeant Pakovics "observed that [defendant had a] slow, low and raspy speech, was very sluggish in movement, had an odor of an alcoholic beverage coming from his breath, [had] bloodshot and watery eyes, and droopy eyelids." Sergeant Pakovics administered the modified Romberg balance test, walk-and-turn test and one-leg stand test but defendant "swayed and was[ un]able to maintain his balance." On the "finger to nose test, [defendant] touched his nose on three of six attempts." Moreover, defendant admitted to Sergeant Pakovics, that he "had three Bacardis" and took "two, five milligram tablets of Percocet and two, three milligram tablets of Lunesta" that day.

### III.

Defendant was convicted under N.J.S.A. 39:4-50 of "operat[ing] a motor vehicle while under the influence of intoxicating liquor[,] . . . narcotic,

A-2157-21

hallucinogenic or habit-producing drug[s]."  State v. Bealor, 187 N.J. 574, 576 (2006).

"[T]he driving while intoxicated statute 'does not require that the particular narcotic[, hallucinogen or habit-producing drug] be identified.'"  Id. at 589 (quoting State v. Tamburro, 68 N.J. 414, 421 (1975)).  "The statute does not define the quantum of narcotics, hallucinogens or habit-producing drugs required to violate this prohibition."  Ibid.  "[T]he issue is simple:  was the defendant 'under the influence' of a narcotic, hallucinogen or habit producing drug while he operated a motor vehicle."  Ibid.

In Bealor, our Supreme Court distinguished between alcohol, where "[a]n ordinary citizen is qualified to advance an opinion in a court proceeding that a person was intoxicated because of consumption of alcohol," id. at 587 (quoting State v. Smith, 58 N.J. 202, 213 (1972)), and marijuana where "[n]o such general awareness exists as yet with regard to the signs and symptoms of the condition described as being 'high' on mari[j]uana."  Ibid.  Nonetheless, "[h]aving rejected the . . . invitation to place lay opinion testimony regarding marijuana intoxication on the same footing as lay opinion testimony as to alcohol intoxication," ibid., the Court still analyzed "whether, in the absence of lay opinion testimony, the evidence tendered . . . was sufficient to prove that

defendant was under the influence of marijuana while he operated a motor vehicle." Id. at 588.

In Tamburro, our Supreme Court considered the statutory phrase "under the influence" and explained:

> [t]he language "under the influence" used in the statute has been interpreted many times. Generally speaking, it means a substantial deterioration or diminution of the mental faculties or physical capabilities of a person whether it be due to intoxicating liquor, narcotic, hallucinogenic or habit producing drugs. In State v. Johnson, 42 N.J. 146, 165 (1964), . . . we stated that "under the influence" meant a condition which so affects the judgment or control of a motor vehicle operator as to make it improper for [the operator] to drive on the highway. . . . In State v. DiCarlo, 67 N.J. 321 (1975), we held that an operator of a motor vehicle was under the influence of a narcotic drug within the meaning [of the statute] if the drug produced a narcotic effect "so altering his or her normal physical coordination and mental faculties as to render such person a danger to himself [or herself] as well as other persons on the highway." Id. at 328.
>
> [Tamburro, 68 N.J. at 420-21.]

In Bealor, our Supreme Court concluded that "the State proved beyond a reasonable doubt that defendant 'operate[d] a motor vehicle while under the influence of . . . narcotic, hallucinogenic or habit-producing drug[s]' in violation of N.J.S.A. 39:4-50." The Court based its conclusion on the arresting officer's

fact testimony in respect of defendant's erratic and dangerous driving, his slurred and slow speech, his "bloodshot and glassy" eyes, his droopy eyelids, his "pale and flushed" face, his "fumbl[ing] around the center console and his glovebox searching for all his credentials," or the smell of burnt marijuana on defendant, his sagging knees and the "emotionless stare on his face."

[Bealor, 187 N.J. at 590.]

Moreover, the arresting officer "on cross-examination . . . testified without objection that defendant was intoxicated . . . ." Ibid. "Finally, the State incontrovertibly proved, through qualified experts, the presence of marijuana in defendant's blood stream . . . ." Ibid.

In sum, Bealor "explicitly disavowed" the notion "that the nexus between the facts of intoxication and the cause of intoxication can only be proved by expert opinion" to support a conviction under N.J.S.A. 39:4-50. Cases with similar fact patterns have considered a wide variety of other corroborative evidence, but usually involve either admissions or physical scientific results. See Tamburro, 68 N.J. at 416-17 (defendant admitted to taking narcotics that day); State v. Franchetta, 394 N.J. Super. 200, 203 (App. Div. 2007) (blood test revealed cocaine metabolites).

Here, the Law Division judge conducted a Bealor analysis. The Law Division judge credited the officers' observations and found: (1) "defendant was

asleep in a driver's seat of his motor vehicle which was parked on a public highway blocking traffic," "the key was in the ignition, the engine was running, the vehicle was in the drive position, and [defendant]'s foot was on the brake"; (2) once defendant "was awaken he was in a very sleepy stage, very confused, did not make much sense when responding to questions," and was "unable to make complete sentences"; (3) "[a]fter defendant exited his motor vehicle, he had difficulty walking around or standing, he swayed back and forth, and continuously moved"; (4) defendant only "partly performed the walk-and-turn test" ("crossing one foot over the other" and "unable to walk forward") and "the one-leg stand test" ("put[ting] his foot down several times"); (5) defendant "was unable to follow Sergeant Norton's finger with his eyes"; and (6) defendant's "voice [wa]s slurred and slow."

Furthermore, the Law Division judge credited the observations of Sergeant Pakovics, who observed: (1) defendant "displayed slow, low and raspy speech, was very sluggish in movement, had an odor of an alcoholic beverage coming from his breath, [and had] bloodshot and watery eyes, and droopy eyelids"; (2) defendant "was[] [un]able to maintain his balance" during "the modified Romberg balance test, walk-and-turn test and one-leg stand test"; and

12

(3) on "the finger to nose test, [defendant] touched his nose on three of six attempts."

The State witnesses' observations were corroborated by other evidence of defendant being under the influence. For example, defendant admitted he took two, five-milligram tablets of Percocet, a narcotic analgesic; two, three-milligram tablets of Lunesta, a CNS depressant; and drank three Bacardis. In addition, defendant's Alcotest reading registered .05 blood alcohol concentration.

The Law Division judge found, "beyond a reasonable doubt, that defendant violated N.J.S.A. 39:4-50 by operating his motor vehicle under the influence of alcohol and a narcotic drug." The judge considered "the perception[s] of [the] officers that [defendant] was under the influence . . . based upon his speech, appearance, and body movement." Further, he attributed the cause of defendant's "intoxication to his admission of drinking three Bacardis, and his .05 Alcotest reading, and his admission to consuming Percocet and Lunesta."

Our role "is to 'determine whether the findings made could reasonably have been reached on sufficient credible evidence present[ed] in the record,' considering the proofs as a whole." Elbert, 377 N.J. Super. at 8. Here, the Law

13

Division judge's conclusion of guilt is unassailable and supported by sufficient credible evidence. We affirm the conviction.

## IV.

Defendant next argues

> [a] judgment of acquittal in favor of defendant should have been entered in the law division as to the driving while under the influence charge at the end of the [S]tate's case since the [S]tate failed to prove beyond a reasonable doubt that defendant was under the influence when he operated a motor vehicle.

We disagree.

A motion for a directed verdict for acquittal is governed by Rule 3:18-1, which requires a judgment of acquittal "if the evidence is insufficient to warrant a conviction." In evaluating the sufficiency of the evidence:

> the trial judge must determine . . . whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [State v. Reyes, 50 N.J. 454, 458-59 (1967).]

We apply the same standard as the trial court to decide if the motion should have been granted. State v. Moffa, 42 N.J. 258, 263 (1964).

Considering all the evidence, including the significant fact testimony we have discussed, we are satisfied the judge could reasonably have found defendant guilty beyond a reasonable doubt of operating a "motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug[s]." N.J.S.A. 39:4-50.

V.

Defendant also argues that the municipal and Law Division judges erred by denying his request to stay his trial matter pending delivery of the Special Master's decision in Olenowski. Again, we disagree.

In Olenowski, our Supreme Court "adopt[ed] a Daubert-type[3] standard going forward to assess the admissibility of [DRE] expert evidence under N.J.R.E. 702 in criminal and quasi-criminal cases" and "remand[ed] the matter to the Special Master for further proceedings . . . ." State v. Olenowski, 253 N.J. 133, 155 (2023).

While our Supreme Court awaited delivery of the Special Master's report, it ordered:

> that the motion for a "stay of all proceedings in other
> courts . . . that raise issues regarding the admissibility
> of [DRE] testimony, which may be potentially affected"
> by the pending appeal is denied. The Court expresses

---

[3] Daubert v. Merrell Dow Pharmaceuticals Inc., 509 U.S. 579 (1993).

no view on the merits of any stay application filed in an individual case in Municipal Court or Superior Court by a party to a proceeding involving DRE testimony.

[State v. Olenowski, 241 N.J. 65 (2020).]

Therefore, the question of whether to stay a particular proceeding was left to the respective courts.

"We apply the principles set forth in State v. Hayes, 205 N.J. 522, 537-38 [] (2011), governing a trial court's exercise of its discretion to grant or deny adjournments." State v. Miller, 216 N.J. 40, 47 (2013). "[W]hen an appellate court reviews a trial court's discretionary determination of a defendant's motion for an adjournment, 'there are two conditions which must exist to warrant' reversal of the conviction." Id. at 66 (quoting Hayes, 205 N.J. at 539) (quoting Smith v. Smith, 17 N.J. Super. 128, 132 (App. Div. 1952)).

"First, 'the judicial action must have been clearly unreasonable in the light of the accompanying and surrounding circumstances.'" Ibid. "Second, the ruling must have prejudiced the . . . " defendant. Ibid. Defendant must have "suffered [a] manifest wrong or injury." Ibid.

Here, defendant argues that denial of his stay request was:

erroneous as the State's main witness was a [DRE] whose qualifications and analysis of the case were both called into question by the defense expert witness. Defendant and his counsel were deprived of the

16

analysis conducted in <u>Olenowski</u> in violation of his Sixth Amendment confrontation right to cross examine the State's witness and in violation of his Fourteenth Amendment due process right to a fair trial.

However, defendant's argument is misplaced because he was convicted based upon corroborated observations "that [he] was under the influence [of alcohol, Percocet and Lunesta] while he operated a motor vehicle." <u>Bealor</u>, 187 N.J. at 574. As mentioned, Sergeant Pakovics' lay testimony, about defendant's admissions or his observations of defendant, was independent of the sergeant's DRE opinion. His credible testimony was important because it provided the factual basis for the Law Division judge to conclude that defendant used "alcohol, Percocet and Lunesta" before operating his motor vehicle. Additionally, Sergeant Pakovics' testimony also was consistent with the observations of Sergeant Norton and Officer Banker.

Therefore, the DRE opinion was inconsequential to defendant's conviction because his conviction rested on officers' observations and corroborative evidence, not expert opinion. Consequently, the denial of his request for a stay, pending receipt of the Special Master's report on DRE evidence, was neither "unreasonable" nor "prejudicial." <u>Miller</u>, 216 N.J. at 66. Under these circumstances we find no abuse of discretion in the denial of defendant's request for a stay of the trial.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

18