**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2246-18T3

RACHEL C. RODRIGUEZ,

     Plaintiff-Respondent,

v.

THOMAS D. PANICONI,

     Defendant-Appellant.

_____

          Argued November 14, 2019 – Decided January 23, 2020

          Before Judges Gooden Brown and Mawla.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FD-19-0107-19.

          Sherry L. Foley argued the cause for appellant (Foley & Foley, attorneys; Sherry L. Foley and Timothy Joseph Foley, on the briefs).

          Melissa Marie Ruvolo argued the cause for respondent (Ruvolo Law Group, LLC, attorneys; Melissa Marie Ruvolo, of counsel and on the brief).

PER CURIAM

Defendant and plaintiff, collectively, the parties, were never married. When their son was born, they agreed to give him defendant's last name, Paniconi. Since then, plaintiff married Daniel Rodriguez, adopted her husband's last name, and resided with the parties' son, her husband, and their two children, both of whom have her husband's last name. Subsequently, plaintiff filed two applications, one in 2017 and one in 2018, to change the parties' now eleven-year-old son's surname to her married surname. The 2017 application was denied, without prejudice, to allow defendant to become more involved in his son's life. The 2018 application was granted based on defendant's inactivity since the earlier denial, and the judge's application of the factors governing such name change applications enunciated in Emma v. Evans, 215 N.J. 197 (2013).

Defendant now appeals from the Family Part's November 16, 2018 judgment granting the name change, and the January 10, 2019 order denying his motion to vacate the November 16 judgment, raising the following points for our consideration:

> POINT I: THE TRIAL COURT ERRED IN GRANTING THE NAME CHANGE BECAUSE PLAINTIFF FAILED TO SHOW BY A PREPONDERANCE OF THE EVIDENCE THAT THE NAME CHANGE WAS IN THE CHILD'S BEST INTERESTS.

A-2246-18T3

POINT II: THE TRIAL COURT ERRED IN ITS APPLICATION OF THE EMMA V. EVANS FACTORS.

We affirm.

Following the birth of their son in 2008, the parties engaged in extensive litigation in the Morris and Sussex vicinages, addressing custody, visitation, and support under the non-dissolution or FD docket. After a hiatus in the litigation between 2015 and 2017, plaintiff, who was the parent of primary residence, filed an application on March 21, 2017, in the Sussex vicinage to change their son's last name to her married surname. On May 5, 2017, the application was denied without prejudice to allow defendant "to take a more active role" and "to be more involved in [their son's] life[.]"[1]

Thereafter, on September 20, 2018, plaintiff filed a pro se complaint pursuant to N.J.S.A. 2A:52-1 for a name change. At the November 16, 2018 hearing, plaintiff testified "this [was her] second attempt . . . to change [their son's] last name per his request." In articulating her reasons for the application, plaintiff explained to the court that their son had "two younger siblings with the last name of Rodriguez[,]" "identifie[d] by [Rodriguez] at school[,]" and was

_____

[1] Neither plaintiff's application nor the resulting order was included in the record.

"told by his teachers he [was] no longer allowed to write . . . Rodriguez on his paperwork because it [was] not a legal name change." Plaintiff also pointed out that when her prior application was denied, the judge gave defendant an opportunity to become more involved in their son's life. However, "[s]ince [they] left court" "over a year and a half" ago, defendant "ha[d] [not] seen [their] son] . . . or attempted to contact him."[2]

Additionally, plaintiff asserted that in making the application, she was "fight[ing] for [her] son . . . because this [was] what he want[ed]." To support her assertion, plaintiff read into the record the following letter written by their son:

> I want to change my last name to Rodriguez because the rest of my family's last name is Rodriguez. I also want to change my last name because the last time I visited [defendant] he forgot my real age, and that to me . . . means he doesn't care that much.
>
> Also, I don't call [defendant] dad because there is no point in calling him a dad if he does not act like one. When my mom came home last year and told me that the judge said no, I was disappointed. I was shocked [defendant] disagreed because he doesn't do anything with me anymore. This time I am hoping the [j]udge will say yes, even if [defendant] says no.

---

[2] In response to the court's question, plaintiff also indicated that defendant's child support payments were in arrears by "about . . . [$3800]."

A-2246-18T3

Upon direct questioning by the court, the parties' son, a fifth-grader, confirmed that he wanted to change his last name "because the rest of [his] family's last name [was] Rodriguez," and he would "feel more comfortable" with Rodriguez as his last name. He was certain about his decision and did not need more time to think about it. Further, no one had pressured him to make the decision, but he decided with his "mom" and "dad[,]" referring to his step-father.

Representing himself, defendant asked the court to "simply adjourn" the application pending the disposition of his motion to "enforce" or "change the visitation [schedule,]" which motion he had allegedly filed in the Morris vicinage "[t]wo months" prior. Defendant indicated that after his earlier attempts to exercise his visitation had been resisted by plaintiff, he had "sought legal counsel" in connection with his visitation rights. However, defendant admitted that he had made no attempt to contact their son in "probably about a year and a half . . . as [plaintiff] stated[,]" and acknowledged that he did not file his visitation motion until recently. Nonetheless, defendant urged the court to "revisit[]" plaintiff's application "after [their son] has spent time with his family" because defendant believed that "if [their son] got time to spend with his real family," then "maybe his decision may be a little different."

5

At the conclusion of the hearing, the judge granted plaintiff's application. In an oral opinion, initially, the judge stated the main issue before the court was "whether it [was] in the best interest of [the parties' son] to change his last name." Acknowledging that "[t]he burden [was] on . . . plaintiff" to prove "by a preponderance of the evidence" that "it [was] in [her son's] best interest . . . for the name change[,]" and applying the applicable factors enunciated in Emma, the judge concluded that plaintiff met her burden.

The judge explained that the child "obviously has strong relationships with the current Rodriguez family and that is how he identifies himself." Specifically, the child has "associated" with the Rodriguez, rather than the Paniconi, name for a "substantial" period of time, and "identifies with [the Rodriguez] family unit." Analyzing "the potential anxiety, embarrassment or discomfort," the judge pointed out that "the child ha[d] been using the name Rodriguez in school and has recently had issues doing so."

Addressing "the child's preference," the judge found the parties' son to be "a mature individual" whose preference was worthy of consideration. While acknowledging that the child was only "ten years of age," the judge found him "more than capable, based on his body language, demeanor, and the words he use[d], to express himself and his desire." The judge was also impressed by the

fact that despite being questioned "by a [j]udge in a black robe who [was] sitting above him" in "an intimidating" fashion, "the child" never "wavered."

As to "parental misconduct or neglect," the judge found neither on the part of plaintiff. However, as to defendant, the judge explained:

> I'm not finding any neglect on the defendant, other than this matter has been carried and denied [o]n previous occasions with the caveat that defendant take further action.
>
> Defendant has not taken further action. He may have had good intentions, but good intentions do not contemplate involvement, so there has been no action by the defendant to rectify the situation.

The judge entered a memorializing judgment pursuant to N.J.S.A. 2A:52-1 to -4.

Thereafter, on November 19, 2018, represented by counsel, defendant moved to vacate the November 16 judgment on the ground that it did not comply "with proper procedure and Court rules." On January 8, 2019, during oral argument, defense counsel indicated that although the motion was labeled a motion to vacate, he was actually seeking "reconsider[ation]" of the court's decision because defendant did not "artfully present a very credible [opposing] argument to the [c]ourt[,]" and the court did not have "all the information available" before making the decision.

A-2246-18T3

Specifically, defense counsel asserted "that the voir dire of the [child] and the letter to [t]he [c]ourt demonstrated [coaching], prompting and preparedness." Further, defense counsel claimed he had "text messages" demonstrating "bad faith" on the part of plaintiff, who purportedly used visitation to "leverage[]" defendant's acquiescence to the name change. Additionally, defense counsel asserted defendant's request for an adjournment should have been granted so that he could be represented by counsel and his pending visitation motion could be adjudicated. In opposition, plaintiff denied defendant's accusations of coaching and bad faith, and reiterated her prior assertions in support of the name change application.

In an oral opinion, the judge denied defendant's motion. Initially, the judge rejected defense counsel's assertion that defendant requested an adjournment in order to retain counsel. On the contrary, the judge found that defendant, who had a lengthy history of self-representation, "proceeded without counsel[.]" The judge explained that "at no point in time did [defendant] make the request to have the matter adjourned so he [could] retain counsel, nor did he make the representation to this [c]ourt that he retained counsel." The judge noted that while there was "a reference in the transcript that . . . defendant had . . . consulted with an attorney regarding the motion for visitation that was filed

in October of 2018 [under] the Morris County docket," "at no point in time was there ever any reference, request or statement made by . . . defendant that he had counsel."

Next, the judge addressed the motion as a reconsideration motion under Rule 4:49-2, as urged by defense counsel. Citing D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990), the judge determined that his decision was not "based on [a] palpably incorrect or irrational basis[,]" nor was there any "probative, competent evidence" the court failed to properly consider to warrant reconsideration. While the judge agreed that "defense counsel . . . may have been able to address the matter on its merits in a more eloquent way[,]" the judge determined there was no evidence presented to support the reconsideration motion "that did not exist or was not available" to the defense "prior to th[e] [c]ourt rendering its decision." See Capital Fin. Co. of Del. Valley. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (explaining that reconsideration is properly denied when the application is based upon unraised facts known to the moving party prior to the entry of the challenged order and "cannot be used to expand the record").

The judge reiterated his analysis of the applicable Emma factors, and confirmed his determination, "based on the information at hand," that plaintiff

9                                                                          A-2246-18T3

established by the requisite burden of proof that it was in the best interest of the child to grant the name change. The judge rejected defendant's argument that in considering the application, plaintiff, as the parent of primary residence, was afforded an unfair advantage. The judge explained:

> I [did] not find, nor did I consider the parent at the primary residence as a deciding factor in the previous application. I certainly understand defendant's argument on how that may sway or influence the additional [Emma] factors because of the exposure to the child. But once again, that also cuts against the defendant because his inaction to exercise parental rights or parenting time from the May 2017 date [un]til the November 16[,] 2018 date speaks volumes. [The child] further drifted away from [defendant], and further did not identify with [defendant] and further did not identify with the Paniconi name. He identified with the Rodriguez name. Therefore, I do not find that the decision of this [c]ourt is palpably defective, and I do not find a basis or a reason that I should reverse or vacate the prior decision.

Nonetheless, the judge emphasized that his decision did not "adversely effect . . . defendant's rights or actions as [a] father" and "encouraged [defendant] as he was encouraged back in 2017 . . . to be involved in [his son's] life and to

take an active role."[3]  On January 10, 2019, the judge entered a memorializing order, and this appeal followed.[4]

On appeal, defendant renews his contention that "plaintiff did not meet her burden of proving the name change was in her son's best interest[.]" Specifically, defendant asserts the judge failed to "discuss[]" or "consider[]" most of the Emma factors, "focused on [defendant's] inaction between name-change applications[,]" and relied on the child's "response to the court's leading questions" without conducting a "probing inquiry" into "the child's best interests."  Defendant also contends the judge should have granted "an adjournment so that [defendant] could get a decision on his pending application to enforce the visitation agreement between the parties."  We disagree.[5]

"When parents have agreed on a name at birth, the parent seeking the name change in a subsequent dispute must bear the burden of showing by a

---

[3]  "The preservation of the paternal bond is not and should not be dependent on the retention of the paternal surname; nor is the paternal surname an indispensable element of the relationship between father and child."  Gubernat v. Deremer, 140 N.J. 120, 141 (1995).

[4]  The judge granted defendant's motion for a stay pending appeal.

[5]  Because plaintiff seeks to change her son's last name to her own legal surname, we reject out of hand defendant's baseless contention that Emma does not apply because Emma did not address changing a child's last name to that of a third party.

preponderance of the evidence that the name change is in the child's best interest." 215 N.J. at 222. The "best-interests-of-the-child test" applies regardless of whether the parents are married or unmarried "at the time of the child's birth." Ibid.

"Applying the best-interests-of-the-child test in the context of a dispute over whether to change a child's name requires a fact-sensitive analysis." Ibid. "Courts should be careful to not give weight to any interests that are unsupported by evidence in the record." Ibid. "Just as importantly, courts should avoid giving weight to any evidence stemming from gender preferences[,]" ibid., and avoid "the heavy tilt of a presumption in favor of the custodial parent's decision to change the jointly given surname of the[] child[]." Id. at 202. Indeed, "[t]he parents in such a dispute should be on equal footing; neither parent should have a superior right[,]" and "[e]ach case should be weighed on its own merits." Id. at 221-22.

In Emma, the Court enunciated a "gender-neutral and child centered totality-of-the-circumstances analysis of the child's interest in retaining or having altered his or her given surname[.]" Id. at 223. In that regard, the Court enumerated a list of non-exclusive "possible factors that may bear on a best-interests-of-the-child analysis in these disputes[.]" Id. at 222. First, the Court

identified the following "child-centric considerations" originally enumerated in

Gubernat, 140 N.J. at 141-42:

> 1. The length of time the child has used his or her given surname.
>
> 2. Identification of the child with a particular family unit.
>
> 3. Potential anxiety, embarrassment, or discomfort that may result from having a different surname from that of the custodial parent.
>
> 4. The child's preference if the child is mature enough to express a preference.
>
> [Emma, 215 N.J. at 223.]

Next, the Court incorporated the following additional factors, "some of which had been identified by the Gubernat Court as factors to be used in rebutting the custodial parent presumption[.]"[6] Emma, 215 N.J. at 223.

> 5. Parental misconduct or neglect, such as failure to provide support or maintain contact with the child.
>
> 6. Degree of community respect, or lack thereof, associated with either paternal or maternal name.

---

[6] In Emma, the Court noted that "the presumption in favor of the custodial parent established in Gubernat [made] compelling sense" and "should continue to be applied to factual circumstances similar to those that arose in Gubernat[,]" where "a parent seeks to change the name given by the only custodial parent at birth." Emma, 215 N.J. at 221, n. 1 (citing Gubernat, 140 N.J. at 122-23).

A-2246-18T3

7. Improper motivation on the part of the parent seeking the name change.

8. Whether the mother has changed or intends to change her name upon remarriage.

9. Whether the child has a strong relationship with any siblings with different names.

10. Whether the surname has important ties to family heritage or ethnic identity.

11. The effect of a name change on the relationship between the child and each parent.

[Id. at 223.]

Here, we are satisfied the judge properly applied the best-interests-of-the-child factors enunciated in Emma, and correctly determined plaintiff met her burden of proof by a preponderance of the evidence. The judge considered the fact that the child utilized the Rodriguez surname in school until he was forbidden, had long associated with and identified himself with the Rodriguez family unit, which included his half siblings, and had no desire to use the Paniconi surname, particularly since defendant did not know important details about him and had shown disinterest in maintaining a relationship with him.

Contrary to defendant's contention, the judge's determination was based in part upon his thorough questioning of the child. We defer to the judge's assessment of the child's maturity and credibility in expressing a preference for

14

the Rodriguez surname.  See Cesare v. Cesare, 154 N.J. 394, 412 (1998) ("Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'") (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).  Further, the judge considered each parent's interest equally, and did not consider plaintiff's preference, as the parent of primary residence, in making his decision.  However, the judge pointed out that it was defendant's own inaction that decreased his exposure to his son, noting that defendant failed to act in a timely manner despite having over one-and-one-half-years between both name change applications to become more involved in his son's life.  As a result, the judge observed that while the child's relationship with the Rodriguez family continued to thrive, his relationship with defendant continued to wane.

In the totality-of-the-circumstances, we are satisfied the judge's determination that adopting the mother's surname is in the best interest of the child is supported by sufficient, credible evidence present in the record.  See id. at 411-12 ("The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence.") (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)).  We also discern no abuse of discretion in the judge's denial of defendant's request

15                                                                    A-2246-18T3

for an adjournment. See State v. Hayes, 205 N.J. 522, 537 (2011) (recognizing that a "motion for an adjournment is addressed to the discretion of the court, and its denial will not lead to reversal unless it appears from the record that [a party] suffered manifest wrong or injury" (quoting State v. Doro, 103 N.J.L. 88, 93 (E. & A. 1926))). Likewise, the judge's denial of defendant's motion for reconsideration reflects no abuse of discretion. See Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) ("Motions for reconsideration are governed by [Rule] 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court[,]" which decision will not be disturbed absent a clear abuse of discretion).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2246-18T3