**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4322-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

STEPHEN WHITE,

     Defendant-Appellant.

_____

Argued October 21, 2019 – Decided February 13, 2020

Before Judges Fasciale, Rothstadt and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 16-02-0117.

Kevin Timothy Conway argued the cause for the appellant.

Christopher W. Hsieh, Chief Assistant Prosecutor argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney; Christopher W. Hsieh, of counsel and on the brief).

PER CURIAM

Defendant Stephen White appeals his conviction and sentence after a jury convicted him of driving while suspended for a second or subsequent driving while intoxicated (DWI) violation, N.J.S.A. 2C:40-26(b). Defendant asserts that the trial judge abused her discretion in denying his request, made on the eve of trial, for a third adjournment of the trial date to allow him to obtain substitute counsel. Defendant also argues that reversal is warranted because he was deprived of effective assistance of counsel at trial. Finally, defendant appeals his sentence, alleging that the trial judge impermissibly counted his lack of remorse as an aggravating factor. We find no merit in any of defendant's arguments and affirm.

We glean the following facts from the record. On October 28, 2015, Hawthorne Police Officer Nicolas Adams was conducting radar speed control in Hawthorne on Route 208. At about 1:30 a.m., Officer Adams observed a four-door black BMW with New Jersey license plates traveling southbound on Route 208. According to the officer's radar, the BMW was traveling eighty-one miles per hour in a fifty-five mile per hour zone. The officer activated the overhead lights of his police vehicle and followed the BMW, which pulled over near Utter Avenue on Route 208 in Hawthorne. Defendant Stephen White was the driver

2

and sole occupant. White smoke was visible coming from the engine compartment of the BMW.

Officer Adams approached and requested defendant's license, proof of insurance, and vehicle registration. Defendant did not immediately produce the documents and the officer asked defendant to "step out of the vehicle, to come to the rear of the vehicle to be interviewed and a pat-down was conducted[.]" Defendant told the officer that he was "lost" and handed over a New York driver's license. Defendant indicated that "he was going to jail because he was not supposed to be driving in New Jersey." After checking with the police dispatcher, Officer Adams learned that defendant's New Jersey driving privileges were suspended.[1]

---

[1] According to the testimony of Johannes Segboer, an investigator with the New Jersey Motor Vehicle Commission since 2003, defendant's license was suspended on two separate occasions. These suspensions stemmed from convictions originating in the Palisades Interstate Parkway Municipal Court. On June 19, 2012, defendant's license was suspended for ninety days as a result of a DWI offense on February 16, 2012. On July 23, 2014, defendant's license was suspended for 730 days because he refused to submit to a breath test, which occurred on October 18, 2013.

Defendant was arrested and issued summonses for DWI, N.J.S.A. 39:4-50, and related motor vehicle offenses.[2] On February 11, 2016, a grand jury indicted defendant with fourth-degree operating a motor vehicle while suspended for a second or subsequent DWI offense, N.J.S.A. 2C:40-26(b).

On February 13, the first day of trial for defendant's offense for driving while suspended, his counsel advised the trial judge that defendant was requesting an adjournment to obtain new counsel. The trial judge, after considering defendant's reasons and analyzing the request under the factors set forth in State v. Furguson, 198 N.J. Super. 395 (App. Div. 1985), denied defendant's request for an adjournment and to substitute counsel. The judge noted that it was "unknown at this time what the delay would be," if defendant were to bring in new counsel. The judge stated that defendant

> [i]ndicated that [his substitute counsel] would be ready to start trial on [February] 27[th], but he had some issues with the type of expert that the present counsel was using, and indicated that he would have gone with a different type of expert from the . . . outset. This is concerning to the [c]ourt since this attorney, to my knowledge, has never seen the discovery in this case. He has never met with the [d]efendant, nor has he

---

[2] The DWI and motor vehicle offenses were tried separately before the trial judge, outside of the jury's presence. The bench trial was completed on or about March 6, 2018, and the judge found defendant guilty on the DWI charge and sentenced him to ninety days in the county jail. Defendant did not appeal that conviction.

reviewed any of the documentation in this case. And for him to say that he would be ready to walk in this court on February 27th, and pick a jury with the expert that Mr. Hashmi already has in place, would be curious to this [c]ourt.

The judge noted that continuances were already granted on two occasions: once when defendant had health issues and once when defendant's mother-in-law had health issues. Moreover, the judge found that the "balance [of] convenien[ce] or inconvenien[ce] to the litigants, witnesses, counsel, and to the [c]ourt" weighed in favor of denying defendant's motion. Defendant was aware that the matter had been scheduled for trial for over eight months. The trial judge further noted that the State made accommodations for the court due to the transfer of another prosecutor, and defendant's counsel had prepared the witnesses and was ready to proceed to trial.

The trial judge further found that defendant's reason for requesting substitution of counsel was "purposeful and contrived" because he was aware of the trial's scheduling and failed to communicate any trial concerns to Hashmi. Thus, the trial judge found that defendant "contributed to the circumstances which [gave] rise to [his] request." The judge found that denying the motion would not prejudice defendant because Hashmi, unaware of defendant's concern,

continued to prepare for trial until the day prior to when jury selection was scheduled to begin.

At trial, defendant testified on his own behalf. Defendant was at Morgan's Public Ale House, a pub in Tappan, New York and left to go home "between 12:30 and [1:00 a.m.]" Defendant indicated that he "would normally take Route 303, get onto the Palisades Parkway heading north, and [he] would get off the Palisades Parkway North to 87 North," and then take Exit 14B. Because Exit 14B was closed due to construction, defendant continued on Route 87 North and looked for "Exit 15, which is Sloatsburg." Defendant drove for "five or six" miles and realized that he may have missed Exit 15. Defendant indicated that he believed that he was in New York and never intended to drive in New Jersey. Defendant then began having mechanical difficulty with his car, with smoke coming out of the hood and through the vents.

At a charge conference, defendant's counsel requested that the jury be instructed that the State was required to prove beyond a reasonable doubt "that the defendant knowingly operated a motor vehicle in New Jersey." The judge denied the request, finding that defendant's geographical location was not a material element of the offense. The trial judge noted that "knowingly," as set forth in the charge, pertains to the operation of a motor vehicle with knowledge

6

that the driver's license was suspended. The trial judge went on to emphasize that the intent behind the driving while suspended statute is to "lodge criminal penalties for persons whose driver's license[s] are suspended for certain drunk driving offenses and who, while under suspension for those offenses unlawfully operate a motor vehicle."

To defendant's benefit, however, the trial judge did instruct the jury on mistake of fact:

> In this case, the defendant contends that he is not guilty of driving while license is suspended or revoked for DWI or refusal to submit to a chemical breath test because he [mistakenly] believed that he was driving in the State of New York.
>
> If you find the defendant held this belief, then he could not have acted with the [s]tate of mind that the State is required to prove beyond a reasonable doubt.
>
> If you find that the State has failed to prove beyond a reasonable doubt that the defendant did not hold this belief, then you must find him not guilty of driving while license is suspended or revoked for DWI or refusal to submit to a chemical breath test.
>
> However, if you find the State has proven beyond a reasonable doubt the defendant did not hold this belief, and you find that the State has proven all of the elements of the offense beyond a reasonable doubt, then you must find the defendant guilty of driving while license is suspended or revoked for DWI or refusal to submit to a chemical breath test.

A-4322-17T4

On March 1, 2018, the jury returned a guilty verdict on the driving while suspended offense. On May 4, 2018, the trial judge denied defendant's motion for a new trial.

At sentencing, the trial judge identified and balanced the aggravating and mitigating factors. The trial judge found aggravating factor number three because defendant's substance abuse issues rendered him at high risk for reoffending. The judge also found aggravating number nine, which considers the need for deterrence, stating "[t]his [c]ourt places particular emphasis and weight on this factor. The statutory and legislative intent behind [N.J.S.A.]2C:40-26 is to deter folks who have their license suspended for a DWI, or refusal, to continue operating their car on the roadways in the State of New Jersey."

The trial judge "impose[d] middle weight" on mitigating factor number seven, which considers that "the [d]efendant has no history of prior delinquency." The trial judge also found mitigating factor number eleven applied because "the imprisonment of the [d]efendant will entail excessive hardship to his . . . dependents."

The trial judge acknowledged that she received letters in support of defendant's good character, which implicated mitigating factor number nine, but

A-4322-17T4

declined to find that the factor was supported in this case. Specifically, the judge stated:

> I am well aware of all of the glowing reports and letters that I have received, indicating that [defendant] would never harm another individual. That he always acts with kindness. That he takes in animals, and he takes care of them. That is not the conduct that he exhibited, and displayed on [October 28, 2015]. In fact, other times he's been in this courtroom, he has never indicated one iota of remorse. He's always indicated, "I can't go to prison with those folks." As if he's somehow . . . better, or looks down upon other folks who are in prison. I'm not saying that Mr. White in any way shape or form is a bad man. Sometimes good people do bad things. But his behavior is what brought him here to this [c]ourt today to be sentenced.

Finding the aggravating factors substantially outweighed the mitigating factors, the judge sentenced defendant to nine months of incarceration with a one-hundred-and-eighty-day period of parole ineligibility, to be served concurrently with the ninety days she had imposed for the DWI conviction.

This appeal ensued. On appeal, defendant presents the following arguments for our review:

> POINT I
>
> IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO FAIL TO INCLUDE IN THE JURY CHARGE RELATING TO N.J.S.A. 2C:40-26(b) THAT [DEFENDANT] KNOWINGLY OPERATED A MOTOR VEHICLE IN NEW JERSEY.

POINT II

IT WAS REVERSIBLE ERROR THAT THE TRIAL COURT DENIED [DEFENDANT] A BRIEF TWO-WEEK ADJOURNMENT TO OBTAIN SUBSTITUTE COUNSEL OF HIS CHOOSING, FORCING [DEFENDANT] TO INSTEAD PROCEED WITH AN ATTORNEY WHO HAD NEVER TRIED A CRIMINAL CASE IN SUPERIOR COURT.

A.    [DEFENDANT'S] SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED.

B.    [DEFENDANT] WAS PREJUDICED AS A RESULT OF THE TRIAL COURT'S DENIAL OF HIS REQUEST FOR A TWO-WEEK ADJOURNMENT FOR NEW COUNSEL RESULTING IN INEFFECTIVE ASSISTANCE OF COUNSEL.

1. TRIAL COUNSEL'S EXPERTISE FELL BE-NEATH THE LEGAL REQUIREMENT WHEN HE OPENED THE DOOR TO EVIDENCE REGARDING AN IGNITION INTERLOCK DEVICE.

2.    IT WAS INEFFECIVE ASSISTANCE OF COUNSEL AS WELL AS REVERSIBLE ERROR FOR THE TRIAL COURT TO ALLOW PHOTO-GRAPHS WITHOUT FOUNDATION OR BASIS TO GO INTO EVIDENCE AND/OR BE USED BY THE STATE TO CROSS-EXAMINE [DEFENDANT].

3.    IT WAS INEFFECTIVE ASSISTANCE OF COUNSEL FOR TRIAL COUNSEL TO INTRODUCE WHAT COULD BE CONSIDERED AN INCRIMI-NATING STATEMENT BY [DEFENDANT].

POINT III

> IT WAS REVERSIBLE ERROR FOR THE JUDGE DURING SENTENCING TO CONSIDER AS AGG-RAVATING CIRCUMSTANCES, [DEFENDANT'S] FAILURE TO BE REMORSEFUL AND HIS LACK OF APOLOGY FOR HIS ACTIONS DURING THE TRIAL.

We address these issues in turn.

### A.

Defendant argues that the trial judge erred in refusing to instruct the jury that the State needed to prove that defendant knowingly operated a motor vehicle in New Jersey pursuant to N.J.S.A. 2C:40-26(b). Defendant contends that by not instructing the jury that the State needed to prove that defendant knew he was in New Jersey, "the [t]rial [c]ourt converted N.J.S.A. 2C:40-26(b) into a strict liability statute[.]" We agree with the trial judge's conclusion that defendant's knowledge of the geographical location in which he was driving is not a material element of the driving while suspended offense, and we conclude there was no error in the jury instructions.

"'Appropriate and proper charges to a jury are essential to a fair trial.' And proper explanation of the elements of a crime is especially crucial to the satisfaction of a criminal defendant's due process rights." State v. Burgess, 154 N.J. 181, 185 (1998) (quoting State v. Green, 86 N.J. 281, 287 (1981)).

11

It is the independent duty of the court to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party. Finally, "[a]s an indication of the paramount importance of accurate jury instructions, we have held that erroneous instructions on material issues are presumed to be reversible error."

[State v. Reddish, 181 N.J. 553, 613 (2004) (quoting State v. Marshall, 173 N.J. 343, 359 (2002)) (citation omitted).]

The driving while license is suspended or revoked statute provides, in pertinent part:

It shall be a crime of the fourth degree to operate a motor vehicle during the period of license suspension in violation of R.S.39:3-40, if the actor's license was suspended or revoked for a second or subsequent violation of R.S.39:4-50 or section 2 of P.L.1981, c. 512 (C.39:4-50.4a).

[N.J.S.A. 2C:40-26(b).]

Because the statute itself does not expressly designate a mens rea requirement, pursuant to N.J.S.A. 2C:2-2(c)(3), the culpability requirement is "knowingly" as defined by N.J.S.A. 2C:2-2(b). That mental state is reflected in the model jury charge for N.J.S.A. 2C:40-26, which describes the elements that must be met by the State to prove the offense:

In order for defendant to be convicted of this offense, the State must prove the following elements beyond a reasonable doubt:

1. That the defendant knowingly operated a motor vehicle;

2. That the defendant's license was suspended or revoked for his/her

(a) first violation of [driving while intoxicated] or [refusal to submit to a chemical breath test] and the actor had previously been convicted of operating a motor vehicle during the period of license suspension while under suspension for that first offense;

OR

(b) second or subsequent violation of [driving while intoxicated] or [refusal to submit to a chemical breath test]; and

3. That the defendant knew that his/her license was suspended or revoked.

[Model Jury Charges (Criminal), "Driving While License is Suspended or Revoked for DWI or Refusal to Submit to a Chemical Breath Test (N.J.S.A. 2C:40-26)" (rev. Apr. 11, 2016).]

As the trial judge correctly found, the geographical location of the motor vehicle's operation is not a material element of the offense. Cf. N.J.S.A. 2C:39-5(e)(1) (criminalizing otherwise lawful possession of a weapon if a defendant possesses the weapon on the grounds of an educational institution). The State needed to prove only that defendant knew he was operating a vehicle and that

he knew his license was suspended for a violation of the DWI statute, both elements of which were conceded by defendant at trial. The trial judge rightly refused to alter the model jury charge to add an additional, non-material, element to the charge.

Regardless, the judge agreed to charge the jury with the defense of "[i]gnorance or mistake," which provides, in pertinent part:

> Ignorance or mistake as to a matter of fact or law is a defense if the defendant reasonably arrived at the conclusion underlying the mistake and:
>
> (1) It negatives the culpable mental state required to establish the offense; or
>
> (2) The law provides that the state of mind established by such ignorance or mistake constitutes a defense.
>
> [N.J.S.A. 2C:2-4(a).]

The trial judge tailored the charge to the facts of this case by instructing the jury that if it found that defendant held the mistaken belief that he was driving in New York, rather than New Jersey, "then he could not have acted with the [s]tate of mind that the State is required to prove beyond a reasonable doubt." Thus, while defendant did not receive the exact jury instruction that he requested, he received a jury instruction that had the same effect, because it required the jury to consider whether the State proved that defendant reasonably but mistakenly

believed he was driving in New York. The judge expressly charged the jury that if they believed defendant's account, they should find him not guilty.

Thus, we discern no error in the jury instructions provided by the trial judge.

B.

Defendant next argues that the trial judge erred by denying his request for a two-week adjournment to obtain new trial counsel. We review a trial court's decision to allow or deny an adjournment for abuse of discretion. State v. Hayes, 205 N.J. 522, 537 (2011). Denial of such a motion "will not lead to reversal unless it appears from the record that the defendant suffered manifest wrong or injury." Ibid. (quoting State v. Doro, 103 N.J.L. 88, 93 (E. & A. 1926)). "If a trial court conducts a reasoned, thoughtful analysis of the appropriate factors, it can exercise its authority to deny a request for an adjournment to obtain counsel of choice." State v. Kates, 216 N.J. 393, 396-97 (2014).

"[A] defendant's right to counsel of choice 'is not absolute' and may be balanced against the demands of the court's calendar, among other issues[.]" Id. at 396. "What constitutes a reasonable adjournment to permit a defendant to retain counsel of his own choice depends generally upon the surrounding facts and circumstances." Hayes, 205 N.J. at 538 (quoting Furguson, 118 N.J. Super.

at 402). We consider the following factors in determining whether an adjournment is warranted:

> [T]he length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.
>
> [Furguson, 198 N.J. Super. at 402 (quoting United States v. Burton, 584 F.2d 485, 490-91 (D.C. Cir. 1978)).]

Pertinent to the issue on this appeal, Zachary Hashmi, Esq., began representing defendant in this matter in February 2016. At the time, Hashmi was a member of the firm in which Jeff Gold, Esq. was a partner. In December 2016, Hashmi became a partner in the firm and continued his representation of defendant. Meanwhile, Gold moved to Colorado. At no time did Gold make a court

16

appearance, handle any aspect of defendant's representation, or discuss any trial issues with defendant.

The trial was twice adjourned at defendant's request, once because of his own health issues, and once due to his mother-in-law's health. In mid-2017, the court set a February 2018 trial date. The trial was scheduled to begin with jury selection on February 13, 2018. On the morning of February 13, however, Hashmi informed the judge that defendant was requesting a two-week adjournment to obtain new counsel. Defendant claimed that "[i]t's always been my understanding that Jeff Gold, the person that I hired, was going to be first chair at my trial. And that . . . Hashmi would be second chair."

Defendant informed the judge that he received a letter from Hashmi on February 9, 2018 that "raised [his] initial concern" about who was going to try the case. Defendant did not discuss this concern with Hashmi. Rather, defendant contacted John Menzel, Esq., between February 9 and February 12, 2018 and reviewed the case with him. They discussed "an expert in the DOT for New York, which was not brought up [by Hashmi]" as well as "[s]ome other issues that . . . [Menzel] . . . had said . . . might have been helpful. . . . or . . . that he might have strategized and utilized" if Menzel had been representing defendant from the outset of the case.

Hashmi advised the trial judge that defendant never expressed any expectation that Gold or someone other than Hashmi would step into the case at the last minute to handle the trial. He added the following:

> Your Honor, I just want to state that I did go through two years['] worth of notes. I have [sixteen] court appearances by me. . . . Everything in the file was done by me, signed by me, indicating that I represent [defendant]. I just don't have anything that would support anything regarding his statement that he was told that someone else would try the case. I just needed to clear the record on that having reviewed all the materials I have in front of me. And I just wanted to put that in front of you, Your Honor. Thank you.

Considering the foregoing factual context, we conclude that the trial judge was well within her discretion in denying defendant's request for a twelfth-hour, third adjournment of the trial to obtain substitute counsel. The judge's decision was issued after a thorough review and careful consideration of the factors set forth in Furguson, 198 N.J. Super. at 402. See Kates, 216 N.J. at 396-97.

Specifically, the trial judge found it was unclear what the realistic length of the delay would be because, although defendant suggested that other counsel was prepared to take over and try the case in two weeks, defendant also stated that his new attorney might have wanted to obtain different expert witnesses. The judge had already granted two prior adjournments to defendant for personal reasons. The judge found that the adjournment would inconvenience the

18

witnesses, counsel, and the court because the trial had been scheduled and rescheduled for eight months.

In addition, the judge found that defendant's request was not for "legitimate reasons," but rather was "dilatory, purposeful, [and] contrived." In that regard, defendant knew that the trial date had been scheduled for eight months, and he was aware that Hashmi was present for all pretrial motions. However, despite defendant's knowledge, he did not bring any concerns to the court's or Hashmi's attention until the eve of trial. For that reason, the judge found that defendant "contributed to the circumstances which [gave] rise to the request [for a continuance.]"

The judge's findings have ample support in the record, and we see no basis to disturb them. We therefore reject defendant's contention that the judge erred in denying his request for an adjournment.

C.

We also reject defendant's argument that the trial judge erred by considering his lack of remorse as an aggravating factor at sentencing.

We review an imposition of a sentence for abuse of discretion. See State v. Johnson, 118 N.J. 10, 15 (1990). Our review of a sentence is limited to whether determination of the sentencing factors was appropriate, whether it was

supported by competent evidence in the record, and whether the sentence it so unreasonable that it shocks the judicial conscience. State v. Roth, 95 N.J. 334, 362-64 (1984). We "affirm a sentence even if [we] would have [reached] a different result, as long as the trial [judge] properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215 (1989).

In this case, the trial judge appropriately identified and balanced the aggravating and mitigating factors, and her findings are amply supported by the record. Contrary to defendant's argument, the trial judge did not consider his lack of remorse as a separate aggravating factor. The trial judge considered defendant's lack of remorse in connection with mitigating factor number nine, "[t]he character and attitude of the defendant indicate that he is unlikely to commit another offense." The trial judge acknowledged that she received letters from those who know defendant, which detailed that he is a good person who does not harm others. The trial judge then went on to state that when balanced against defendant's lack of remorse for his prior alcohol-related driving offenses, demonstrated by his repeated DWI violations, she did not find that mitigating factor number nine applied. We thus conclude that the sentence imposed was within the judge's discretion.

A-4322-17T4

D.

Finally, we reject defendant's argument that reversal is warranted because his trial attorney provided ineffective assistance of counsel. New Jersey courts "have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." State v. Preciose, 129 N.J. 451, 460 (1992). We find no reason to depart from that sound policy in this case and decline to address defendant's ineffective assistance claims on direct appeal.

To the extent that we have not addressed the parties' remaining arguments, we conclude that they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4322-17T4